UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BRUCE F. FILSON, D.D.S.,                       CIVIL NO. 07-3219 (ADM/JSM)

     Plaintiff,

v.                                             <u>REPORT AND RECOMMENDATION</u>

RADIO ADVERTISING MARKETING
PLAN, LLC., and CLEAR CHANNEL
COMMUNICATIONS, INC.,

     Defendants.

     JANIE S. MAYERON, U.S. Magistrate Judge

     The above matter came before the undersigned upon defendants' Motion to Compel Arbitration [Docket No. 5].

     Michael D. Schwartz, Esq., appeared on behalf of plaintiff.  Peter J. Kestner, Esq., appeared on behalf of defendant Radio Advertising Marketing Plan.  Michael B. Chase, Esq., appeared on behalf of defendant Clear Channel Communications.  The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

     Based upon the pleadings, it is recommended that defendants' Motion to Compel Arbitration and Stay Action [Docket No. 5] be GRANTED.

## I.   FACTUAL BACKGROUND

     The pertinent facts, as alleged in the Complaint, are as follows.  On September 18, 2001, plaintiff ("Filson") entered into a licensing agreement ("Licensing Agreement") with defendant Radio Advertising Marketing Plan ("RAMP").  Affidavit of Joseph Barton, Ex. A, ¶ 5.  Pursuant to the agreement, RAMP was to provide advertising and marketing

services for Filson's dental practice and Filson was obligated to use RAMP's media buyer, who was Clear Channel Communications.  Complaint, ¶¶ 7, 9, 20.

The Licensing Agreement contained the following provisions:

ARBITRATION.   Any controversy or claim for damages or economic losses arising out of or relating to the Agreement or the breach thereof, except as to injunctions as set forth above, shall be settled by arbitration in Philadelphia, Pennsylvania in accordance with the rules of the American Arbitration Association, then pertaining to civil arbitration, and judgment upon the award rendered may be entered in any court having Jurisdiction thereof.

APPLICABLE LAW.  This Agreement shall be interpreted and construed according to the laws of the Commonwealth of Pennsylvania.

ENTIRE AGREEMENT.  This Agreement contains the entire agreement of the parties.  It may not be changed or altered, except by an agreement in writing signed by the party against whom enforcement of any, change, modification, extension or discharge is sought.

Barton Aff., Ex. A, ¶¶ 13, 14, 15.

The Licensing Agreement required Filson to pay monthly fees to RAMP for a period of 12 months.  Id., Ex. A, ¶ 1.  The Licensing Agreement was signed by Filson, but was not signed by RAMP.  Clear Channel is not a party to the Agreement.

Filson is a resident of the State of Minnesota, defendant RAMP is a corporation registered in Pennsylvania, and defendant Clear Channel Communications is a Texas corporation.  Complaint, ¶¶ 2, 3.

A series of broadcasting agreements governed Clear Channel's obligation to air Filson's commercials at specific times on specific radio stations.  Complaint, ¶¶ 22, 23. From January to May 2006, a radio commercial advertising a different dentist in Tulsa, Oklahoma aired at the designated times and dates Filson had purchased from Clear Channel through RAMP.  Id., ¶ 24.

On May 25, 2007, Filson filed suit against RAMP and Clear Channel in Minnesota state court, alleging breach of contract, breach of the implied duty of good faith and fair dealing, negligence, breach of fiduciary duty, and professional negligence. Defendants removed the case to federal court on July 5, 2007.

On August 20, 2007, RAMP filed the present motion to compel arbitration and stay this suit, alleging that the written contract governing Filson's relationship with RAMP provided for arbitration of disputes.  Clear Channel has joined in this motion. [Docket No. 11].  RAMP maintains that Filson filed suit after verbal demands by RAMP that the dispute be arbitrated pursuant to the contract, and that Filson is refusing to comply with the contract.[1]

## II.   DISCUSSION

RAMP contends that all of the allegations pled by Filson fall within the scope of the arbitration provision contained in the Licensing Agreement and thus, arbitration must be compelled.  In response, Filson raises several grounds in support of his position that this dispute should not be arbitrated: (1) the FAA is inapplicable to the Licensing Agreement; (2) the arbitration clause is unenforceable under Pennsylvania law because it is unconscionable; (3) the arbitration clause is unenforceable because the expired contract does not govern the relationship between Filson and RAMP; (4) the arbitration clause is unenforceable as to his claims of professional negligence as they do not arise out of or relate to the Agreement between him and RAMP; and (5) conducting an arbitration solely on the contractual issues raised by his Complaint, and without Clear

---

[1]   RAMP has instituted an arbitration proceeding against Filson with the American Arbitration Association.  Affidavit of Peter J. Kestner, Ex. B.

Channel, who is not a party to the Licensing Agreement, and Dental Organization for Conscious Sedation ("DOCS"), another party he seeks to add to the suit,[2] would frustrate the purpose of the FAA to resolve disputes in an orderly and swift manner.

**A. <u>Applicability of the Dispute Under the FAA</u>**

Section 2 of the Federal Arbitration Act (FAA) provides as follows:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Section 4 of the FAA requires a court to issue an order compelling arbitration when one party has failed or refused to arbitrate a controversy in accordance with his or her agreement to do so.  9 U.S.C. § 4.  The court's role in deciding whether to compel arbitration is limited to determining "whether the parties have entered a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement."  <u>Gannon v. Circuit City Stores, Inc.</u>, 262 F.3d 677, 680 (8th Cir. 2001).  There is a strong presumption in favor of arbitration and any doubts concerning arbitration rights should be resolved in favor of arbitration.  <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).

---

[2]     At the same time as RAMP moved to compel arbitration, the parties submitted a stipulation to the Court to permit Filson to amend the Complaint to add DOCS to the case as an additional defendant.  [Docket No. 16].  This Court denied the stipulation without prejudice, stating that after it had issued its decision on RAMP's motion to compel arbitration, the parties could renew the request.  Order dated September 11, 2007 [Docket No. 23].

Filson argues that the FAA does not govern this dispute because the Licensing Agreement does not evidence a transaction involving interstate commerce. Pl. Mem., p. 4.  In support, Filson contends that he only intended to advertise his dental services in Minnesota, his advertised services would only be rendered in Minnesota, and all of the radio stations that RAMP sought to purchase time were located in Minnesota. Pl. Mem., p. 3.   As such, Filson maintains that interstate commerce is not implicated by the agreement, and the FAA is inapplicable.  Id.  In opposition, defendants argue that the contract at issue affects "commerce" within the meaning of 9 U.S.C. § 1 because it involves the sale of services across state lines. Def. Mot., p. 3.

The "involving commerce" requirement in the FAA has been broadly interpreted by the Supreme Court:

> We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 273-274 (1995).  Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," Perry v. Thomas, 482 U.S. 483, 490 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"— that is, "within the flow of interstate commerce." Allied-Bruce Terminix Cos., 513 U.S. at 273 (internal quotation marks, citation, and emphasis omitted).

Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003).

The Supreme Court further elaborated that "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.'  Only that general practice need bear on

interstate commerce in a substantial way." Id. at 56-57 (internal and external citations omitted).

The Court finds that the contract in this case involves interstate commerce. Filson is a resident of the State of Minnesota, defendant RAMP is a corporation registered in Pennsylvania, and defendant Clear Channel Communications is a Texas corporation. Complaint, ¶¶ 2, 3. Thus, the contract at issue provides that RAMP, a Pennsylvania corporation, will provide services to Filson, who was located in Minnesota, through Clear Channel, located in Texas, and that Filson will pay RAMP for these services. See Barton Aff., Ex. A. Correspondence among the three parties was sent in and out of Minnesota, Pennsylvania and other states. See Affidavit of Bruce Filson, D.D.S., Exs. A-F. Consequently, the Court concludes that the transactions of services, payments, and communications between Filson and defendants among Minnesota, Pennsylvania and other states constitute "involving commerce" within the meaning of the FAA. See Barker v. Golf U.S.A., Inc., 154 F.3d 788, 790-91 (8th Cir. 1998) (agreement involved interstate commerce where agreement was between parties located in different states, and contemplated transfer of inventory and money between the states); see also Comanche Indian Tribe of Oklahoma v. 49, L.L.C., 391 F.3d 1129, 1132 (10th Cir. 2004) (agreement between Illinois and Oklahoma residents related to interstate commerce and therefore was governed by FAA).

Filson also contends that the arbitration provision is not sufficient to compel arbitration under the FAA because RAMP did not sign the Licensing Agreement and his suit asserts causes of action independent of the Licensing Agreement. Pl. Mem., p. 7. These contentions find no support in the law.

First, "[a]lthough § 3 of the FAA requires arbitration agreements to be written, it does not require them to be signed."  <u>Tinder v. Pinkerton Security</u>, 305 F.3d 728, 736 (7th Cir. 2002) (citing <u>Valero Refining, Inc. v. M/T Lauberhorn</u>, 813 F.2d 60, 64 (5th Cir. 1987)).  Second, "[a] nonsignatory can enforce an arbitration clause against a signatory to the agreement 'when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory.'"  <u>CD Partners v. Grizzle</u>, 424 F.3d 795, 798 (8th Cir. 2005) (quoting <u>MS Dealer Serv. Corp. v. Franklin</u>, 177 F.3d 942, 947 (11th Cir. 1999) (citation omitted). Here, Filson, the party who did sign the Licensing Agreement, has brought a breach of contract action (among other claims), relying heavily on the terms and duties set forth in the Licensing Agreement.  <u>See</u> Complaint, ¶¶ 7-20, 26-40.  "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate."  <u>CD Partners</u>, 424 F.3d at 798 (citation omitted).[3]

Second, the fact that Filson also asserted claims sounding in tort (breach of the implied duty of good faith and fair dealing, negligence, breach of fiduciary duty, and

---

[3]     Filson also argued that since RAMP did not sign the agreement, it does not govern the contractual relationship between Filson and RAMP, and the arbitration clause is therefore, unenforceable under Pennsylvania law.  Pl. Mem. p. 14.  Even if this Court were to apply Pennsylvania law to determine the enforceability of a contract that was not signed by one of the parties, it would reach the same result.  "It is the well-settled law of this Commonwealth that a contract is created where there is mutual assent to the terms of a contract by the parties with the capacity to contract.  <u>Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Board</u>, 739 A.2d 133, 136 (1999).  As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties.  <u>Id</u>. at 136."  <u>Firetree, Ltd. v. Department of General Services</u>, 920 A.2d 906, 911 (Pa.Cmwlth. 2007).

professional negligence), in addition to a breach of contract claim, does not change this result.  All of these claims are founded on the contractual relationship shared between him and RAMP, and in the case of the negligence claims alleged in Counts III and V of the Complaint, explicitly rely on RAMP's and Clear Channel's alleged failure to perform under the Licensing Agreement.  See CD Partners, 424 F.3d at 800 ("Broadly worded arbitration clauses…are generally construed to cover tort suits arising from the same set of operative facts covered by a contract between the parties to the agreement."); Hoffman v. Cargill, Inc., 968 F.Supp. 465, 476 (N.D.Iowa 1997) (plaintiff's claims of misrepresentation, negligence, and conversion constituted disputes relating to the transaction where each of the claims went directly to defendant's alleged failure to perform under the contracts); Kroll v. Doctor's Assocs., 3 F.3d 1167, 1170 (7th Cir. 1993) ("[A] plaintiff may not avoid an otherwise valid arbitration provision merely by casting its complaint in tort. The touchstone of arbitrability in such situations is the relationship of the tort alleged to the subject matter of the arbitration clause.") (internal quotations and citations omitted).

Based on these principles, the Court finds that the arbitration clause is governed by the FAA, and that RAMP, can enforce the arbitration clause against Filson in this case even though it never signed the Licensing Agreement.

**B.**     **Enforceability of the Agreement**

1.     Unconscionability of Arbitration Clause

Filson argues that the arbitration clause is procedurally unconscionable because it is a boiler-plate arbitration clause in a standard contract drafted by RAMP.  Pl. Mem., p. 9.  Specifically, Filson claims that because the arbitration clause was a boilerplate

clause in a standard contract drafted by RAMP, he had no meaningful choice, there was no negotiation and there was a disparity in bargaining power. Pl. Mem., p. 9; Filson Aff., ¶ 14. Further, Filson claims that the arbitration clause unreasonably favors defendant. Pl. Mem., p. 9.

"Generally, when deciding whether an arbitration provision is unconscionable, courts apply ordinary state-law principles governing the formation of contracts." Pro Tech Industries, Inc. v. URS Corp., 377 F.3d 868, 872 (8th Cir. 2004) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The agreement provides that Pennsylvania law governs. Barton Aff., Ex. A, ¶ 14. The parties do not dispute this. Accordingly, the Court will look to Pennsylvania state law to determine whether the arbitration provision in the agreement is unconscionable. See Pro Tech Industries, 377 F.3d at 872 (citation omitted).

Under Pennsylvania law, "[a] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." Salley v. Option One Mortgage Corp., 925 A.2d 115, 119 (Pa. 2007). "Consequently, for a Court to deem a contractual provision unconscionable it must determine both 'that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.'" Todd Heller, Inc. v. United Parcel Service, Inc., 754 A.2d 689, 701 (Pa.Super. 2000) (quoting Harris v. Green Tree Financial Corporation, 183 F.3d 173, 181 (3d Cir. 1999)).

Filson contends that the arbitration provision is unreasonably favorable to RAMP because it requires him to seek counsel in Pennsylvania to arbitrate a claim arising from activity in Minnesota, while at the same time having to litigate in Minnesota his claims against Clear Channel.  Pl. Mem., pp. 9-10.  The Court does not find that mandating the arbitration to occur in Pennsylvania unreasonably favors RAMP.  See Metzgar v. Star Pontiac, Inc., 2005 WL 3947961 (Pa.Com.Pl. Feb. 4, 2005) (provision directing that arbitration was to take place in the judicial district where plaintiff purchased the contract did not unreasonably favor defendant or unreasonably burden plaintiff).  Filson signed the Licensing Agreement knowing that the arbitration would occur in Pennsylvania, and offered no evidence to suggest that he challenged the clause or attempted to negotiate a different result.  The arbitration clause was not confusing or unclear as to the location of potential arbitration.

Further, the United States Supreme Court has long recognized the validity and utility of forum selection clauses.  "A forum clause should control absent a strong showing that it should be set aside.  Much uncertainty and possibly great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place where personal or in rem jurisdiction might be established.  The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting."  Scherk v. Alberto-Culver Co., 417 U.S. 506, 518 (1974) (citations omitted).  See also Kline v. Kawai America Corp., 498 F. Supp. 868, 871 (D.Minn. 1980) (concluding that, "[u]nder federal common law, forum-selection clauses 'are prima facie valid and should be enforced unless enforcement is

shown by the resisting party to be 'unreasonable' under the circumstances . . . [and the] party resisting enforcement of the clause bears a heavy burden of proof to show unreasonableness") (citations omitted).   There is nothing inherently unfair about a provision that dictates that a dispute will be heard and resolved in the state of one of the parties to the relationship. See Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1298 (3d Cir. 1996) (upholding district court's ruling that "[s]imply because Plaintiff is unhappy, in retrospect, about the forum it designated is insufficient to warrant a finding that the clauses are unenforceable. It would be patently unfair to allow Plaintiff to avoid the mandates of the forum selection clauses due to inconvenience because we would merely be shifting the burden of inconvenience to the other party to the Agreement"); Patriot Commercial Leasing Co., Inc. v. Kremer Restaurant Enterprises, 915 A.2d 647, 651 (Pa.Super. 2006) ("a forum selection clause in a commercial contract between business entities is presumptively valid and will be deemed unenforceable only when: 1) the clause itself was induced by fraud or overreaching; 2) the forum selected in the clause is so unfair or inconvenient that a party, for all practical purposes, will be deprived of an opportunity to be heard; or 3) the clause is found to violate public policy."); Metzgar v. Star Pontiac, Inc., 2005 WL 3947961 (Pa.Com.Pl. Feb. 4, 2005) (provision directing that arbitration was to take place in the judicial district where plaintiff purchased the contract did not unreasonably favor defendant or unreasonably burden plaintiff).

Filson also contends that it would be unfair for him to arbitrate in Pennsylvania while litigating in Minnesota against defendant Clear Channel, who was not a party to the agreement between RAMP and Filson.  The Court understands the inconvenience

of the situation, but "[a]s the Supreme Court said in <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), 'we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation.'" <u>AgGrow Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh, PA</u>, 242 F.3d 777, 783 (8th Cir. 2001).[4]  In addition, the United States Supreme Court has held that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." <u>Green Tree Fin. Corp. v. Randolph</u>, 531 U.S. 79, 91 (2000).

It was Filson's choice to litigate against Clear Channel and to do so in Minnesota. As such, the Court does not find the arbitration clause to be unreasonably unfair to Filson to oblige him to arbitrate with RAMP in Pennsylvania and litigate against Clear Channel in Minnesota.

With respect to whether Filson had any meaningful choice regarding the arbitration clause, Filson claims that since the arbitration clause was boilerplate and contained in a standard contract drafted by RAMP, the clause is unconscionable.  Pl. Mem., p. 9.

> Pennsylvania law concerning the enforceability of arbitration agreements is in accordance with Federal law, requiring that arbitration agreements be enforced as written and allowing an arbitration provision to be set aside only for generally recognized contracted defenses such as duress, illegality, fraud and unconscionability.  <u>Lytle v. CitiFinancial Services, Inc</u>., 810 A.2d 643, 656 (Pa.Super. 2002)….Pennsylvania law, like the FAA, favors arbitration. However, where the arbitration clause is contained in an

---

[4]     For this same reason, this Court rejects Filson's argument that arbitrating the dispute without Clear Channel and DOCS, the other party he seeks to add to the suit, would frustrate the purpose of the FAA to resolve disputes in an orderly and swift manner.  The fact that piecemeal litigation may ensue, is not a basis for invalidating an otherwise valid arbitration provision.

adhesion contract and unfairly favors the drafting party, such clauses are
unconscionable and must be deemed unenforceable.

Thibodeau v. Comcast Corp., 912 A.2d 874, 880 (Pa.Super. 2006).

"Contracts of adhesion are standardized form contracts presented to consumers

without negotiation or any option for modification." Id. at 882.  Pennsylvania law defines

a contract of adhesion as one "'prepared by one party, to be signed by the party in a

weaker position, [usually] a consumer, who has little choice about the terms.'" Id.

(quoting Robson v. E.M.C. Ins. Companies, 785 A.2d 507, 510 (Pa.Super. 2001)).

However, "not every form contract can be termed a contract of adhesion.

Whether a contract is, in fact, an adhesion contract must be determined on an individual

basis, in light of the particular circumstances and parties involved." Denlinger, Inc. v.

Dendler, 608 A.2d 1061, 1067 (Pa.Super. 1992) (citing Commonwealth of Pennsylvania

v. Monumental Properties, Inc., 314 A.2d 333, 339 (1973)).

While the Licensing Agreement appears to be a form contract that was prepared

by RAMP and signed by Filson, the Court does not find that it is an adhesion contract.

There is no indication that the parties were of unequal bargaining power.  Filson was a

dentist, and also a businessman who owned his own dental practice and was seeking to

advertise his services.   No evidence was submitted by Filson to the Court that he

challenged the terms of the Licensing Agreement prior to signing it or that RAMP

engaged in some sort of conduct that placed Filson in the position of having no choice

but to accept the arbitration clause.  Further, Filson presented no evidence to suggest

that RAMP was his only choice for advertising services and thus, the Court presumes

that he had other advertising options available to him which he chose not to pursue at

that time.

In a case involving a contract for advertising in Pennsylvania, the Pennsylvania Superior Court noted that "…advertisements are generally considered outside the realm of necessary services…The parties contracting for paid advertising are at liberty to fashion the terms of their bargain." Vasilis v. Bell of Pennsylvania, 598 A.2d 52, 54 (Pa.Super. 1991) (internal citations omitted).  The court further stated that "where a contract provision affects commercial entities with meaningful choices at their disposal, the clause in question will rarely be deemed unconscionable.  We believe that the doctrine of unconscionability, developed to provide relief to customers who lack sophistication and business acumen, is inapplicable herein." Id.

In the present case, there is no argument that Filson lacked sophistication or business acumen, and the Court does not believe that the contract at issue is the type that requires protection of a consumer.  As such, the Court does not find that Filson lacked meaningful choice regarding his acceptance of the arbitration clause in the agreement.

Because Filson has failed to show that the arbitration clause unreasonably favors RAMP and that he had no meaningful choice in accepting the arbitration clause, the Court finds that the arbitration clause is not unconscionable.

2.    Governance of Expired Agreement

The Licensing Agreement was signed on September 18, 2001 by Filson.  While it had no explicit date of termination, it required Filson to pay a fee each month for a period of 12 months.  No new Licensing Agreement was executed by either Filson or RAMP.

Filson argued that since the Licensing Agreement expired, it cannot govern the contractual relationship between Filson and RAMP and the arbitration clause is therefore, unenforceable.  Pl. Mem. p. 14.  RAMP contended that the contract was renewed by conduct, and that as the parties continued to operate under the terms of the 2001 contract until 2005, its arbitration provision is enforceable.

"[I]n the absence of any specified manner of renewal, performance under the contracts by either party without objection is adequate to effect renewal of the contracts. Com., Dept. of Transp. v. Brozzetti, 684 A.2d 658, 664 (Pa.Cmwlth. 1996) (citing Restatement (Second) of Contracts §§ 30(2), 202(4) (1979)).  The Brozzetti court went on to hold that "because Brozzetti performed under each of the contracts beyond the expiration of their first terms, without objection from [plaintiff], we hold that the contracts were renewed." Id.

Here, assuming that the Licensing Agreement expired on September 18, 2002, Filson continued to receive advertising services from RAMP until 2005.  He continued to make regular payments to RAMP for the radio advertisements to air, and RAMP continued to air the advertisements.  Each party continued to perform under the terms of the original contract.

> [G]eneral principles of contract law teach us that when a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive. The rationale for this rule is straightforward: when parties to an ongoing, voluntary, contractual relationship, especially a relationship which by its nature generally implies that some mutually agreed upon rules govern its configuration, continue to behave as before upon the lapse of the contract, barring contrary indications, each party may generally reasonably expect

that the lapsed agreement's terms remain the ones by which the other party will abide.

Luden's Inc. v. Local Union No. 6 of Bakery, Confectionary, and Tobacco Workers Int'l of Am., 28 F.3d 347, 355-56 (3d Cir. 1994) (relying in part on the Restatement (Second) of Contracts and Williston on Contracts).

The Court finds that because Filson and RAMP continued to perform under the terms of the Licensing Agreement, there was a valid and enforceable agreement between the parties.

3.     Is the Dispute Covered by the Arbitration Agreement?

The Court must next determine whether the existing dispute falls under the coverage of the agreement.  Gannon, 262 F.3d at 680.  Filson contends that his causes of action include negligence, and as he does not need to rely on the Licensing Agreement to bring negligence claims, not all of his claims arise out of and directly relate to the written agreement.  As such, he argues that the dispute is not governed by the arbitration clause.  Filson misses the point and the scope of the arbitration clause. The arbitration clause states in pertinent part:

> Any controversy or claim for damages or economic losses arising out of or relating to the Agreement or the breach thereof, except as to injunctions as set forth above, shall be settled by arbitration . . . .

Burton Aff., Ex. A, ¶13 (emphasis added).  This language "has been characterized by the Supreme Court as 'a broad arbitration clause.'"  General Mills, Inc. v. Hunt-Wesson, Inc., 889 F.Supp. 1119, 1123 (D.Minn. 1995) (quoting Prima Paint Corp., 388 U.S. at 398)).

Pennyslvania law is in accordance with this principle.  In a case analyzing an arbitration agreement containing nearly identical language as the arbitration clause

here, the court held that "[the arbitration agreement] is framed in the broadest conceivable language from which it must be concluded that the parties intended the scope of the submission to be unlimited.  Where, as here, there is an unlimited arbitration clause, any dispute which may arise between the parties concerning the principle contract is to be settled pursuant to its terms."  <u>Borough of Ambridge Water Authority v. Columbia</u>, 328 A.2d 498, 501 (Pa. 1974).  Furthermore, "a claim's substance, not its styling, is to control whether the complaining party must proceed to arbitration or may file in the court of common pleas."  <u>Shadduck v. Christopher J. Kaclik, Inc.</u>, 713 A.2d 635, 637 (Pa.Super. 1998).  The Court in <u>Shadduck</u> proceeded to hold that because the factual averments of the tort claims in the case underlied the breach of contract claims, the claims were not temporally or factually distinct and all claims were covered by the arbitration agreement.  <u>Id</u>. at 638-639.  <u>See</u> also <u>Acevedo Maldonado v. PPG Industries, Inc.</u>, 514 F.2d 614, 616 (1st Cir. 1975) ("Broad language of this nature covers contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort, or are couched in terms of the contribution owed by one tortfeasor to another.").

Here, the issue is not whether the arbitration clause covers his negligence claims.  The issue is whether this controversy between Filson and RAMP arises out of or relates to the Licensing Agreement.  Clearly it does.  All of Filson's claims, including those grounded in negligence, are premised on the contractual relationship created by the Licensing Agreement.  Stated otherwise, the controversy between Filson and RAMP, and all of Filson's associated claims, all arise out of or relate to the Agreement.  As such, the dispute falls within the purview of the arbitration clause.

Because the Court has determined that the parties have entered a valid and enforceable agreement to arbitrate and that the existing dispute falls under the coverage of the arbitration clause, the Court recommends granting defendants' motion to compel arbitration.

### C.   <u>Stay of Litigation</u>

In addition to moving to compel arbitration, RAMP and Clear Channel have requested a stay of the judicial proceedings pending the outcome of arbitration.

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

Once a Court has determined that a dispute falls within the scope of an arbitration agreement, the proceedings in the case relating to that arbitrable dispute must be stayed pending the completion of arbitration.  "Under [the FAA] with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue."  <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co</u>., 388 U.S. 395, 403 (1967); <u>Houlihan v. Offerman & Co</u>., 31 F.3d 692, 695 (8th Cir. 1994); <u>Simitar Entertainment, Inc. v. Silva Entertainment, Inc</u>., 44 F.Supp.2d 986, 997 (D.Minn. 1999) ("Once a Court has determined, that a dispute falls within the scope of

an arbitration agreement, the proceedings in the case, on the issues referable to arbitration, must be stayed pending the completion of arbitration."). Having determined that Filson's claims against RAMP are arbitrable, the Court will stay Filson's claims as to RAMP pending the outcome of the arbitration.

Regarding Filson's claims against Clear Channel, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). See also Kansas City Southern Transport Co., Inc. v. Teamsters Local Union # 41, 126 F.3d 1059, 1067 (8th Cir. 1997) (quoting same). Because it is not a party to the agreement, Clear Channel cannot be compelled to participate in the arbitration between RAMP and Filson. Therefore, there is no mandate that the litigation against Clear Channel must be stayed under the FAA. Nonetheless, Clear Channel joined the request for a stay in this case on the grounds that a stay is appropriate where the main dispute is between Filson and RAMP and Clear Channel's involvement is tangential. Def. Clear Channel's Mem., p. 3 [Docket No. 11].

A district court has discretion to stay litigation among nonarbitrating parties pending the outcome of the arbitration. Moses H. Cone., 460 U.S. at 20 n. 23. See also AgGrow Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh, PA, 242 F.3d 777, 782-83 n. 5 (8th Cir. 2001) (courts have discretion to stay litigation when a parallel arbitration proceeding should have priority); Contracting NW, Inc. v. City of Fredericksburg, 713 F.2d 382, 387 (8th Cir. 1983) (finding it sensible to stay litigation against nonarbitrating parties "when the third party litigation involves common questions of fact that are within the scope of the arbitration agreement.").

When considering whether to grant a discretionary stay, courts should weigh "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." AgGrow, 242 F.3d at 783. See also Liberty Mut. Ins. Co. v. Mandaree Public School Dist. No. 364, 459 F.Supp.2d 866, 873 (D.N.D. 2006) ("In deciding whether to grant a discretionary stay, courts should consider judicial economy, avoidance of confusion, and possible inconsistent results.").

Filson's claims against Clear Channel parallel those against RAMP. The claims against Clear Channel all arise out of the agreement between Filson and RAMP, and the facts of the case against Clear Channel are the same operative facts in the case against RAMP. The Court finds that the risk of inconsistent rulings and confusion militates in favor of a stay of the claims against Clear Channel. Any ruling that RAMP may receive in arbitration will affect Clear Channel under the facts of this case. Accordingly, the litigation against Clear Channel should be stayed pending the arbitration with RAMP.

## III.    CONCLUSION

The Court finds that the FAA is applicable to this case and that the arbitration clause in the agreement is not unconscionable under Pennsylvania law. As such, the agreement to arbitrate is valid. Furthermore, Filson's claims against RAMP arise under the arbitration clause. Consequently, arbitration of this dispute against RAMP should be compelled and the litigation against RAMP stayed. Finally, due to the intertwining facts of this case, Filson's claims against Clear Channel should also be stayed pending the outcome of the arbitration with RAMP.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

Defendants' Motion to Compel Arbitration and Stay Action [Docket No. 5] be

GRANTED.


Dated:        February 19, 2008


*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge



Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **March 3, 2008** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.