UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bruce F. Filson, D.D.S.,

        Plaintiff,

                **MEMORANDUM OPINION**
v.                     **AND ORDER**
                Civ. No. 07-3219 ADM/JSM

Radio Advertising Marketing Plan, LLC,
and Clear Channel Communications, Inc.,

        Defendants.

_____

Michael D. Schwartz, Esq., Michael D. Schwartz, P.A., Chanhassen, MN, on behalf of Plaintiff.

Peter J. Kestner, Esq., Crawford & Kestner, P.A., Oakdale, MN, on behalf of Radio Advertising Marketing Plan, LLC.

Michael B. Chase, Esq., Chase Law Office, St. Paul, MN, on behalf of Clear Channel Communications, Inc.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Plaintiff Bruce F. Filson, D.D.S.'s ("Filson") Objections [Docket No. 31] to Magistrate Judge Janie S. Mayeron's February 19, 2008, Report and Recommendation ("R&R") [Docket No. 30]. The R&R granted Defendant Radio Advertising Marketing Plan, LLC's ("RAMP") Motion to Compel Arbitration and to Stay Action [Docket No. 5]. For the reasons set forth below, Filson's Objections are overruled.

## II. BACKGROUND

Filson practices dentistry in Bayport, Minnesota. Compl. [Docket No. 1] ¶ 1. RAMP is a Pennsylvania corporation with its principal place of business in Jeffersonville, Pennsylvania. Id. ¶ 2. Defendant Clear Channel Communications, Inc. ("Clear Channel"), is a Texas corporation

with its principal place of business in San Antonio, Texas.  Id. ¶ 3.

On September 18, 2001, Filson and Ramp entered into a licensing agreement (the "Licensing Agreement") whereby RAMP agreed to provide advertising and marketing services for Filson's "Sedation (Sleep) Dentistry" practice.  Id. ¶ 7; Barton Aff. [Docket No. 8] Ex. A. The Licensing Agreement was signed by Filson but not by RAMP.  Id. at 2.  Under the Licensing Agreement, Filson was required to pay monthly fees to RAMP for a period of twelve months, and Filson was obligated to use RAMP's media buyer to purchase radio commercials.  Barton Aff. Ex. A ¶¶ 1, 3.  RAMP's media buyer was the Dental Organization for Conscious Sedation ("DOCS").  Pl.'s Opp'n to RAMP's Mot. to Compel Arbitration [Docket No. 12] at 2-3.

The Licensing Agreement contains an arbitration clause that states in part that "[a]ny controversy or claim for damages or economic losses arising out of or relating to the Agreement or the breach thereof . . . shall be settled by arbitration in Philadelphia, Pennsylvania in accordance with the rules of the American Arbitration Association . . . ."  Id. ¶ 13.  A choice-of-law clause provides that the Licensing Agreement shall be interpreted and construed under Pennsylvania law.  Id. ¶ 14.  An integration clause states, "[t]his Agreement contains the entire agreement of the parties.  It may not be changed or altered, except by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought."  Id. ¶ 15.

RAMP directed DOCS to purchase radio commercial advertising on certain Minnesota radio stations operated by Clear Channel.  Compl. ¶ 20; Pl.'s Opp'n to RAMP's Mot. to Compel Arbitration at 2-3.  A series of broadcasting agreements governed Clear Channel's obligation to air Filson's commercials at specific times on specific dates on specific Clear Channel radio

stations. Compl. ¶ 22.

In December 2005, RAMP and DOCS failed to purchase radio station broadcasting time for Filson's commercials. Id. ¶ 22. From January 1 to May 1, 2006, a radio commercial advertising a dentist in Tulsa, Oklahoma, aired during the dates and times that Filson had purchased from Clear Channel through RAMP and DOCS. Id. ¶ 24.

On May 25, 2007, Filson filed his Complaint against RAMP and Clear Channel,[1] asserting claims of breach of contract, breach of the implied duty of good faith and fair dealing, and negligence against RAMP and Clear Channel, and claims of breach of fiduciary duty and professional negligence against RAMP.

### III. DISCUSSION

**A.   Standard of Review**

"The district judge must determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**B.   Filson's Objections**

In the R&R, Judge Mayeron determined that: (1) the arbitration clause in the Licensing Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16; (2) the Licensing Agreement governed Filson's and RAMP's conduct in 2005 and 2006; (3) Filson's claims

---

[1] On September 4, 2007, the parties filed a Stipulation [Docket No. 16] to add DOCS as a defendant. On September 12, 2007, Judge Mayeron denied the Stipulation without prejudice, stating that the parties could renew the stipulation after RAMP's Motion to Compel Arbitration and to Stay Action is decided. Order [Docket No. 23].

against RAMP are within the scope of the arbitration clause; (4) the arbitration clause is enforceable; and (5) the instant action should be stayed as to all parties while Filson arbitrates his claims against RAMP in Pennsylvania.

In his Objections, Filson argues that: (1) the Licensing Agreement did not govern in 2005 and 2006 because it expired in 2002; (2) the arbitration clause is unenforceable because it was unconscionable; and (3) his claims against Clear Channel should not be stayed.

### 1.     Whether the Licensing Agreement Expired

The Licensing Agreement was signed by Filson on September 18, 2001.  Although it did not include a termination date, the Licensing Agreement specified that Filson would pay monthly fees to RAMP for a period of twelve months.  Neither Filson nor RAMP executed a subsequent agreement.  Based on the twelve months of monthly fees specified in the Licensing Agreement, Filson argues the Licensing Agreement expired on September 18, 2002.  Joseph Barton, RAMP's Vice President, asserts that Filson renewed the Licensing Agreement four times, so that it governed the conduct creating this lawsuit.  Barton Aff. ¶ 6.  Barton does not specify how Filson renewed the Licensing Agreement.  In response, Filson argues the Licensing Agreement's integration clause prevents extensions "without agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought."  Id. Ex. A ¶ 15.

Applying Pennsylvania law, Judge Mayeron concluded that because Filson and RAMP performed under the terms of the Licensing Agreement after the agreement allegedly expired, a valid and enforceable agreement existed when the conduct at issue occurred in 2005 and 2006.

Judge Mayeron relied on Third Circuit and Pennsylvania case law for the proposition that:

> [W]hen a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive.

Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery, and Tobacco Workers Int'l Union of Am., 28 F.3d 347, 355-56 (3d Cir. 1994); see also Commw., Dep't of Transp. v. Brozzetti, 684 A.2d 658, 664 (Pa. Commw. Ct. 1996) ("[I]n the absence of any specified manner of renewal, performance under the contracts by either party without objection is adequate to effect renewal . . . .").

This Court agrees with Judge Mayeron's analysis.  Although not discussed in the R&R, Filson's argument that the Licensing Agreement expired in 2002 contradicts his allegations in the Complaint that RAMP breached the Licensing Agreement in 2005 and 2006.  See Compl. ¶¶ 31, 35.  Regardless, assuming arguendo that the Licensing Agreement expired in September 2002, Filson and RAMP continued to perform under the terms of the Licensing Agreement—Filson submitted monthly payments to RAMP and RAMP performed the services specified in the Licensing Agreement.  Filson and RAMP's conduct evinces a contract, and the terms of that contract were the material terms of the Licensing Agreement, including the arbitration clause.

      2.    **Whether the Arbitration Clause Was Unconscionable**

In his Objections, Filson renews his argument that the arbitration clause was unconscionable.  Under Pennsylvania law, "[a] contract or term is unconscionable, and therefore

avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." <u>Salley v. Option One Mortgage Corp.</u>, 925 A.2d 115, 119 (Pa. 2007).

In his Opposition to RAMP's Motion to Compel Arbitration, Filson argued he had no meaningful choice regarding the inclusion of the arbitration clause "because it is a boiler-plate arbitration clause in a standard contract drafted by RAMP." Pl.'s Opp'n to RAMP's Mot. to Compel Arbitration at 9. Judge Mayeron rejected this argument because:

> There is no indication that the parties were of unequal bargaining power. Filson was a dentist, and also a businessman who owned his own dental practice and was seeking to advertise his services. No evidence was submitted by Filson . . . that he challenged the terms of the Licensing Agreement prior to signing it or that RAMP engaged in some sort of conduct that placed Filson in the position of having no choice but to accept the arbitration clause. Further, Filson presented no evidence to suggest that RAMP was his only choice for advertising services . . . .
>
> . . .
>
> In the present case, there is no argument that Filson lacked sophistication or business acumen, and the Court does not believe that the contract at issue is the type that requires protection of a consumer.

R&R at 13-14. This Court fully endorses Judge Mayeron's reasoning, which Filson does not address in his Objections. Filson has not demonstrated that he had a lack of meaningful choice in accepting the arbitration clause.

Judge Mayeron also concluded that Filson failed to show that the arbitration clause unreasonably favors RAMP. In his Objections, Filson renews his argument that the arbitration clause unreasonably favors RAMP because the clause requires Filson to arbitration claims in Pennsylvania arising from radio advertising in Minnesota. However, under Pennsylvania law,

> [A] forum selection clause in a commercial contract between business entities is presumptively valid and will be deemed unenforceable only when: (1) the clause itself

was induced by fraud or overreaching; (2) the forum selected in the clause is so unfair or inconvenient that a party, for all practical purposes, will be deprived of an opportunity to be heard; or (3) the clause is found to violate public policy.

Patriot Commercial Leasing Co. v. Kremer Rest. Enters., 915 A.2d 647, 651 (Pa. Super. Ct. 2006). Although Filson argues that an arbitration in Pennsylvania would be inconvenient for him, he does not contend that he would effectively be deprived of an opportunity to be heard.

Filson also contends that the arbitration clause unfairly favors RAMP because it would result in piecemeal and repetitive litigation. However, federal courts enforcing the Federal Arbitration Act "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985). Moreover, RAMP itself may be required to participate in piecemeal proceedings to the same extent as Filson. Filson has failed to satisfy either prong of Pennsylvania's unconscionability test. Filson's objections regarding the enforceability of the arbitration clause are overruled.

      **3.**      **Whether Filson's Claims Against Clear Channel Should Be Stayed**

Filson does not dispute that if his objections regarding the arbitration clause are overruled, the Federal Arbitration Act mandates that his claims against RAMP be stayed while those claims are arbitrated in Pennsylvania. See 9 U.S.C. § 3.[2] However, Filson objects to Judge Mayeron's recommendation that his claims against Clear Channel also be stayed.

Because it is not a party to the Licensing Agreement, Clear Channel cannot be compelled

---

[2] Section three of the statute provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

to participate in the arbitration between RAMP and Filson.  Kansas City S. Transp. Co. v. Teamsters Local Union # 41, 126 F.3d 1059, 1067 (8th Cir. 1997).  District courts have "discretion to stay a lawsuit when a parallel arbitration proceeding should have priority."  AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 242 F.3d 777, 783 n.5 (8th Cir. 2001).  "In a complex, multi-party dispute . . . issues such as the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays must be weighed in determining whether to grant a discretionary stay, and in fashioning the precise contours of any stay."  Id. at 783.

     Judge Mayeron concluded that because Filson's claims against Clear Channel assert parallel claims and the same operative facts as Filson's claims against RAMP, Filson's claims against Clear Channel should be stayed to avoid the risk of inconsistent rulings and confusion.  This Court agrees.  In his Objections, Filson argues for the first time that this Court should stay the arbitration so that he can first proceed on his claims against Clear Channel and DOCS, who would then presumably implead RAMP as a third-party defendant.  Filson asserts that this sequence of litigation before arbitration would avoid the risk of inconsistent results and might obviate the need for a subsequent arbitration.  Pl.'s Objections at 5.  However, the Federal Arbitration Act evinces "the strong federal policy favoring agreements to arbitrate."  AgGrow Oils, 242 F.3d at 782.  Filson's request to stay the arbitration would essentially allow him to avoid his agreement to arbitrate his dispute with RAMP.  Moreover, the Court finds that Filson's arguments regarding the benefits of a litigation-first sequence are speculative.  The Court adopts Judge Mayeron's recommendation that this entire litigation be stayed.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Bruce F. Filson, D.D.S.'s Objections [Docket No. 31] to Magistrate Judge Janie S. Mayeron's February 19, 2008, Report and Recommendation [Docket No. 30] are **OVERRULED**;

2. The Report and Recommendation is **ADOPTED IN ITS ENTIRETY**;

3. Defendant Radio Advertising Marketing Plan, LLC's Motion to Compel Arbitration and to Stay Action [Docket No. 5] is **GRANTED**;

3. This action is **STAYED AS TO ALL PARTIES** pending completion of an arbitration between Plaintiff and Radio Advertising Marketing Plan, LLC, in Pennsylvania.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 7, 2008.